490 So.2d 377 (1986)
Jack J. DONNELLY, Sr.
v.
GREYHOUND RENT-A-CAR et al.
No. C 5102.
Court of Appeal of Louisiana, Fourth Circuit.
June 2, 1986.
Writ Denied September 26, 1986.
*378 Robert W. Booksh, Jr., George W. Pugh, Jr., New Orleans, for petitioners.
Raymond C. Burkart, Jr., New Orleans, for respondent.
Before REDMANN, C.J., and GARRISON, KLEES, CIACCIO and LOBRANO, JJ.
REDMANN, Chief Judge.
Sued on the theory that a Louisiana statute makes them the uninsured motorist insurers of an authorized driver of a leased automobile, an automobile leasing company and its insurer under a liability policy issued in Florida moved but were refused summary judgment of dismissal. We granted certiorari and we now reverse.
La.R.S. 22:1406 D(1)(a), by its terms, requires uninsured motorist insurance (unless waived in writing) only in insurance "delivered or issued for delivery" in Louisiana. It does not purport to, and it does not, apply to policies delivered elsewhere. Snider v. Murray, 461 So.2d 1051 (La. 1985). Thus the Louisiana statute does not superimpose UM coverage upon this policy that defendant insurer delivered in Florida.
We therefore need not decide whether, within the Louisiana statute, a named-insured automobile lessor is an "insured named in the policy" (as are the state, Franklin v. Charity Hospital of La., 422 So.2d 243 (La.App. 4 Cir.1982), cert. denied 423 So.2d 1184, and other business entities, see Johnson v. Ortego, 408 So.2d 397 (La. App. 1 Cir.1981)). The statute provides that the UM "coverage required under this Subsection shall not be applicable where any insured named in the policy shall reject in writing the coverage or selects lower limits." (Ashline v. Simon, 466 So.2d 622 (La.App. 5 Cir.1985), cert. denied 472 So.2d 28, cited by plaintiff, did not decide that question nor discuss the meaning of "any insured named in the policy." Ashline, declining to follow Jordan v. Honea, 407 So.2d 503 (La.App. 1 Cir.1981), cert. denied 409 So.2d 654, 660, held a self-insured lessor liable as an UM insurer because it not only insured itself but also "provides to the lessee insurance coverage on the same basis as any automobile liability policy." 466 So.2d at 624. Tapia v. Ham, 480 So.2d 855 (La.App. 2 Cir.1985), cert. denied 484 So.2d 138, although citing Ashline in holding the lessor liable, in fact held a lessor's liability insurer not liable to a lessee as an UM insurer, on the ground that the named insured had rejected UM coverage.)
Florida law similarly does not superimpose UM coverage upon this Florida liability policy. Florida requires UM coverage, but its requirement (like Louisiana's) does not apply if UM coverage is rejected by "any insured named in the policy." Under Florida law, a named insured who is an automobile lessor is not the less a named insured, and "any" cannot be construed to mean "every," and "named" cannot be deleted, in that statutory language; a named-insured automobile lessor's rejection of UM coverage is therefore effective. Kohly v. Royal Indemnity Co., 190 So.2d 819 (Fla. App.1966).
Our plaintiff argues, however, that by including in its leases the representation that a leased "vehicle is covered by a liability *379 insurance policy ... contain[ing] bodily injury or death liability limits of $100,000 per person and $300,000 per occurrence...," and by advertising that "rate includes insurance against liability," lessor Greyhound issues insurance in Louisiana to each person to whom Greyhound leases a vehicle in Louisiana; and that Greyhound does so either for itself or as Canal's agent. Plaintiff therefore argues that Greyhound "should have placed a written waiver in front of the renter asking him or her to sign indicating whether or not the renter wanted uninsured motorist coverage." We disagree.
Tapia v. Ham, supra, supports plaintiff's position on this point. Tapia held liable as UM insurers both the Ford Motor Company and its dealer Wray Ford Inc., a licensee of Ford's Rent-a-Car System and the lessor of the automobile whose lessee was injured by an uninsured motorist. The rental agreement, describing Wray as licensee, recited "Licensee provides insurance coverage ... in accordance with the standard provisions of an automobile liability insurance policy with limits of [$100,000/$300,000]...." The Tapia opinion immediately adds: "A premium for this coverage was included in the monthly rental charge." Tapia held the licensee Wray liable on the ground that
"a standard automobile liability policy would include the statutorily required UM coverage ..., unless the UM provision was expressly rejected by the insured. La.R.S. 22:1406(D)(1)(a)."
Tapia is incorrect in its assertion that the Louisiana statute imposes UM coverage unless rejected by "the insured," for the statutory phrase is "any insured named in the policy." A standard policy affords liability coverage to anyone driving with the permission of the owner, and thus makes every such driver an "insured," but does not make such a driver an "insured named in the policy." Our contract provides that its insurance policy's coverage "will be provided in accordance with a standard automobile liability insurance policy," but we reject Tapia's assertion that therefore it contains UM coverage. We rule instead that a standard policy includes UM coverage unless, in the statute's words, "any insured named in the policy" rejects it. And that is what happened here: Greyhound Rent-A-Car Corporation, the only insured named in the policy, rejected UM coverage by a separate document attached to the policy. We hold that a representation that an insurance policy affords coverage in accordance with a standard automobile liability policy does not imply that UM coverage has not been rejected by a named insured, and that such a representation therefore does not promise a lessee UM coverage.
Conceivably Tapia's result is based on the theory that its rental contract constituted the issuance of insurance in Louisiana, because (1) that contract declared that "Licensee provides insurance coverage ..." and (2) "[a] premium for this coverage" was charged by the licensee. Whatever the merit of that theory, we distinguish our case factually in that (1) our rental contract does not say that lessor "provides insurance coverage," but that "The vehicle is covered by a liability insurance policy (or a certificate of self-insurance, where applicable)" and (2) no premium was charged for insurance.
(Incidentally, Tapia held Ford Motor Company liable, too, because Ford's license agreement promised the licensee that the vehicles would be "covered by insurance protecting ... the daily rental customer" for $100,000/$300,000 liability, plus $1,000,000 excess that we need not discuss. Ford in fact bought a liability insurance policy with the promised basic coverage, but as named insured Ford expressly rejected UM coverage. On that ground, as previously noted, Tapia did hold that the insurer was not liable for UM coverage.)
The basic reason why our lessor, Greyhound, does not for itself issue insurance is that Greyhound does not by our contract language agree or purport to insure, i.e., to take upon itself the risk of liability of its lessee. In our context of having procured insurance from an insurer, Greyhound does nothing by that language other than represent, *380 truthfully, that insurance already exists.
Nor does Greyhound for its insurer offer to its customers the choice of having insurance against liability or not (just as Louisiana law does not offer to Greyhound the choice of not having its automobiles insured against authorized drivers' liability, up to $10,000 and $20,000 limits, as noted below). Nor does Greyhound's leasing an automobile to a customer change the insurer's contract of insurance or the risks insured against, any more than an individual owner's lending an automobile to a friend changes the owner's insurance. Just as an individual owner does not issue liability insurance by lending an insured automobile to a friend, our automobile lessor does not issue liability insurance, for itself or for its insurer, by leasing an insured automobile.
Although it presumably could have, as it did with the direct action statute, La.R.S. 22:655 (see Snider, 461 So.2d at 1053-54), the Louisiana legislature has never decreed that every policy of liability insurance effective in Louisiana, irrespective of where issued, includes uninsured motorist coverage unless waived. Nor has the legislature decreed that insurance covering leased vehicles must be by a policy issued in Louisiana. Nor has the legislature decreed that an automobile lessor cannot lease automobiles in Louisiana unless the lessor provides UM coverage. (Although R.S. 32:861 does require of a motor vehicle registered in this state liability insurance or its equivalent insuring any person "using any such motor vehicle ... with the express or implied permission of such named insured...," with $10,000/$20,000 limits, R.S. 32:900 B(2), it does not amend R.S. 22:1406 D(1)(a)'s provision that UM coverage is not imposed upon Louisiana-delivered insurance when "any insured named" has rejected it in writing.) Nor has the legislature decreed that every liability policy includes UM coverage in favor of every omnibus insured unless that omnibus insured waives it. Nor has the legislature decreed that a motor vehicle lease describing applicable liability insurance constitutes the issuing of liability insurance in Louisiana. Whether those possible rules merit adoption is a question for the legislature, and not for the courts.
There is no legal basis for holding either Greyhound or Canal Insurance Company liable to plaintiff as his uninsured motorist insurer. There is no genuine dispute of material fact, and defendants are entitled to summary judgment of dismissal as a matter of law.
Reversed; plaintiff's suit against Greyhound and Canal dismissed at plaintiff's cost.
KLEES, J., with whom GARRISON, J., joins, dissenting with opinion.
KLEES, Judge, dissenting.
Defendants sought summary judgment, arguing that the waiver of uninsured motorist coverage by Greyhound, was sufficient to prevent a finding of liability on the part of the defendants for injuries caused by the negligence of an uninsured motorist. The trial court denied the motion for summary judgment, ruling that the rental agreement in the instant case "is contra to the public policy of Louisiana" as "every person who pays for liability insurance must in turn be afforded the opportunity to directly reject uninsured motorist coverage."
While it is acknowledged that the written waiver of uninsured motorist coverage by Greyhound may be valid in a dispute between Greyhound and its insurer, it does not follow that Greyhound's waiver is sufficient in regards to a suit by a lessee who is required to reject uninsured motorist coverage. I would agree with our brothers on the Fifth Circuit that such a mandatory rejection is in violation of the public policy inherent in the Uninsured Motorist Statute. Cf. Ashline v. Simon, 466 So.2d 622 (La. App. 5th Cir.1985), writ denied, 472 So.2d 28 (1985).