640 So.2d 448 (1994)
Sam and Alice LATIOLAIS, Plaintiffs-Appellants,
v.
LIBERTY MUTUAL INSURANCE CO., et al., Defendants-Appellees.
No. 93-579.
Court of Appeal of Louisiana, Third Circuit.
May 4, 1994.
Writ Denied September 23, 1994.
*449 Patrick Craig Morrow Sr., Opelousas, for Sam and Alice Latiolais.
Keith Saverio Giardina, Baton Rouge, for Liberty Mut. Ins. Co., et al.
Jerry Alan Oubre, New Iberia, for Mr. and Mrs. Louis Bourque.
Jerry Alan Oubre, New Iberia, for La. Farm Cas. Ins. Co.
Before GUIDRY, DOUCET and COOKS, JJ.
COOKS, Judge.
This appeal raises the question of whether the addition of multiple vehicles to a business automobile fleet policy with no change in bodily injury limits requires separate rejection of UM coverage each time a vehicle is added to the fleet. The trial court granted a motion for summary judgment in favor of Liberty Mutual finding the addition of multiple vehicles to a fleet policy does not require a separate rejection of uninsured motorist coverage. We affirm.
On November 22, 1991, Sam Latiolais sustained injuries while operating a 1989 Dodge pickup owned by Emile Barras, Inc. during the course and scope of his employment. He was rear-ended by a vehicle driven by Mrs. Louis Bourque which caused him injuries that required lumbar surgery and rendered him disabled. Mrs. Bourque was insured by Farm Bureau Insurance. However, this policy as alleged was inadequate to cover Latiolais' damages. Latiolais and his wife filed suit against Liberty Mutual Insurance Company claiming entitlement to UM coverage.
The Liberty Mutual policy in question is a business automobile liability policy covering the fleet of automobiles owned by Emile Barras Inc. This policy was issued on May 31, 1991 containing liability limits of One Million Dollars ($1,000,000.00). Attached to the fleet policy was a written rejection of uninsured motorist coverage signed by Emile Barras in his capacity as president of the company. As is customary with fleet policies, it is undisputed during the period from May 31, 1991 (the effective date of the policy) through November 22, 1991 (the date of the accident), five (5) additional vehicles were added to the Liberty Mutual Policy. These automobiles were listed as follows:
1. 1983 Dodge pickup, added 6/26/91;
2. 1983 GMC pickup, added 6/26/91;
3. 1983 GMC pickup, added 6/26/91;
4. 1980 Chevrolet pickup, added 6/26/91;
5. 1985 Mac truck, added 8/9/91.
No additional rejections of UM coverage were executed by the insured at the time these vehicles were added. Appellants allege each time the vehicles were added to the fleet policy, in effect, a "new" policy was issued to Emile Barras, Inc., which required it to reject UM coverage on each occasion. The vehicle involved in the accident was listed and covered at the time the original policy was issued.

DISCUSSION
Uninsured motorists coverage exists in all auto policies in amounts equal to liability limits unless the insured expressly rejects UM coverage. La.R.S. 22:1406(D)(1)(a) provides, in pertinent part:
"(1)(a)(i) No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle designed for use on public highways and required to be registered in this state or as provided in this Subsection unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy, under provisions filed with and approved by the commissioner of insurance, *450 for the protection of persons insured thereunder who are legally entitled to recover nonpunitive damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death resulting therefrom; however, the coverage required under this Subsection shall not be applicable where any insured named in the policy shall reject in writing, as provided herein, the coverage or selects lower limits. In no event shall the policy limits of an uninsured motorist policy be less than the minimum liability limits required under R.S. 32:900. Such coverage need not be provided in or supplemental to a renewal, reinstatement, or substitute policy where the named insured has rejected the coverage or selected lower limits in connection with a policy previously issued to him by the same insurer or any of its affiliates. The coverage provided under this Subsection may exclude coverage for punitive or exemplary damages by the terms of the policy or contract." (Emphasis Added).
It is undisputed that Emile Barras, Inc., through its president, rejected UM coverage under the fleet policy issued by Liberty Mutual Insurance Company. The sole question then is whether a fleet policy insured must execute a UM rejection each time a vehicle is added to the policy. Appellant say yes. We think the contrary.
They rely extensively on our opinion in Donaghey v. Cumis Ins. Soc., 600 So.2d 829 (La.App. 3d Cir.1992). The Donaghey decision, however, must be read in context; and its holding is limited to the facts presented. Donaghey involved the effects of adding other vehicles to an "individual" automobile policy. There, the insured added a third automobile to the policy. This addition was not anticipated or contemplated by the parties at the time the insurance contract was executed. We concluded the addition of a car to an individual automobile policy, without changes in bodily injury limits, amounted to an increase in that policy's coverage. We refused to treat the addition as a mere renewal of an existing policy and found it constituted issuance of a new policy requiring a separate rejection. Renewal policies do not require separate rejections or selection of lower limits. La.R.S. 22:636.1(A)(5).
On the other hand, a fleet policy (by its nature) contemplates the addition and subtraction of vehicles from coverage. Brigette Fontenot, an employee of Liberty Mutual, explained fleet policy changes are not done until the expiration of the policy. She explained:
"If a vehicle is added or deleted, we just post on the policy. The actual paperwork is not done until the end of the year. The insured has automatic coverage on any vehicle he adds. It's fleet automatic policy."
Fontenot also testified it was always Emile Barras' intention to reject uninsured motorist coverage. The policy renewed itself continually without interruption of coverage.
In Bordelon v. Jackson, 499 So.2d 392 (La.App. 4th Cir.1986), writ denied, 500 So.2d 412 (La.1987), the Fourth Circuit Court of Appeal addressing a similar coverage question, held a new policy did not result each time a vehicle was added to or deleted from a fleet policy. Therefore, it was not necessary, "nor [did the court] find any authority requiring the named insured to reject UM coverage each time a vehicle is added to the policy." We adopt this holding.
Although cars were continually added to the fleet policy, there was uninterrupted coverage. Fleet policies envision such additions; and, the insured is not required to execute separate rejection when each new vehicle is added to these commercial policies. This requirement would be unduly burdensome and impractical. Neither public policy nor strict interpretation of La.R.S. 22:1406(D)(1)(a)(i) require us to insist that such rejections must be executed each time a vehicle is added to an existing fleet policy.
For the foregoing reasons, the decision of the trial court is affirmed. All costs are assessed against appellants.
AFFIRMED.